UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE W. CARADINE IV,

               Plaintiff,              CIVIL ACTION NO. 12-10614

                                       DISTRICT JUDGE ROBERT H. CLELAND

        v.                      MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT (DKT. NO. 10), DENY DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT (DKT. NO. 13), AND**
**REMAND THE CASE TO THE COMMISSIONER**

## I.    PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On February 11, 2012, Plaintiff filed suit seeking judicial review of the Commissioner's

decision to deny him social security benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B)

and Local Rule 72.1(b)(3), the matter was referred to this Magistrate Judge for a report and

recommendation (Dkt. No. 3). Cross-motions for summary judgment are pending (Dkt. Nos. 10,

13). Plaintiff also filed a Reply (Dkt. No. 14).

### B.    *Administrative Proceedings*

On August 3, 2010, Plaintiff applied for disability and disability insurance benefits as

well as a Title XVI application for supplemental security income, alleging a disability onset date

of July 30, 2009[1] (Tr. 20). Plaintiff's claim was initially denied by the Commissioner on

December 15, 2010 (Tr. 20). On August 1, 2011, Plaintiff appeared with counsel for a hearing

before Administrative Law Judge ("ALJ") Michael R. Dunn, who considered the case *de novo*.

In a decision dated August 23, 2011, the ALJ found that Plaintiff was not disabled (Tr. 20-32).

Plaintiff requested a review of this decision (Tr. 1). On December 15, 2011, the ALJ's decision

became the Commissioner's final decision when the Appeals Council denied Plaintiff's request

for further review (Tr. 1-3).

In light of the entire record, this Magistrate Judge finds that substantial evidence does not

support the Commissioner's determination that Plaintiff was not disabled. Accordingly, **IT IS**

**RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's

motion for summary judgment be **DENIED**, and the case be **REMANDED** to the

Commissioner.

## II.      STATEMENT OF FACTS

### A.      *ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found

at step one that Plaintiff had not engaged in substantial gainful activity (Tr. 22).

At step two, the ALJ found Plaintiff had the following "severe" impairments: HIV

positive and depression (Tr. 22).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination

of impairments that met or medically equaled one of the listed impairments in the regulations

(Tr. 23).

---

[1]This date was changed to May 1, 2010 at the administrative hearing (Tr. 41-42).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional

Capacity ("RFC") to perform:

> light work . . . except [he is] able to lift up to 20 pounds occasionally; lift or carry
> up to 10 pounds frequently; stand or walk for approximately 6 hours per 8 hour
> workday and sit for approximately 2 hours per 8 hour work day, with normal
> breaks; work is limited to simple, routine and repetitive unskilled tasks . . . in a
> work environment free of fast paced production requirements with emphasis on
> per shift rather than a per hour basis.  The work must involve only simple, work-
> related decisions, and there must be few, if any, work place changes.

(Tr. 25).

At step four, the ALJ found that Plaintiff could not perform his past work as a

dishwasher, server/waiter, fast food worker, and stock worker (Tr. 30).

At step five, the ALJ denied Plaintiff benefits, finding Plaintiff could perform work as a

packer (6,000 jobs in the region; 280,000 jobs nationally), sorter (4,000 jobs in the region;

220,000 jobs nationally), and inspector (6,000 jobs in the region; 240,000 jobs nationally) (Tr.

31).

### B.     Administrative Record

#### 1.     Plaintiff's Testimony & Statements

Plaintiff testified at the administrative hearing that fatigue and dry mouth prevented him

from working as a server at Applebee's (Tr. 45-46).  Plaintiff said he needed frequent bathroom

breaks because he had to drink a lot of water; he also needed frequent breaks to rest (Tr. 46).  In

addition to fatigue and dry mouth, Plaintiff testified he cannot sleep through the night; he has

rash outbreaks, muscle pain, crying spells, racing thoughts, difficulty focusing, headaches,

nausea, diarrhea, and oral thrush[2] (Tr. 48, 56-58).  When Plaintiff is depressed, he does not eat

---

[2]Thrush is characterized by white plaques of soft curd-like material that may be stripped off, leaving a raw
bleeding surface.  *See Dorland's Illustrated Medical Dictionary*, 1949 (31st Ed. 2007).

(Tr. 58). Plaintiff said he can only walk half a block; he gets sharp pains in his lower back if he does not sit in a comfortable chair (Tr. 55-56). Plaintiff testified that he takes Remeron[3], Wellbutrin[4], and Diflucan[5] (Tr. 48, 59). Plaintiff's brief states he also takes two medications to treat HIV-1 infection: Truvada[6] and Isentress[7] (Dkt. No. 10 at 9).

According to Plaintiff, he can shower, shave, get dressed on his own, and prepare a "TV dinner" (Tr. 48-49). Plaintiff cannot do laundry, if the elevator in his apartment is broken, because walking down stairs causes him back pain (Tr. 49). Otherwise, Plaintiff can do laundry if he has a light load (Plaintiff needs help with a heavy loads) (Tr. 49). Plaintiff's roommate does the grocery shopping (Tr. 50).

### 2.      Vocational Expert's Testimony

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, educational background, and past relevant work experience who can lift up to 20 pounds occasionally, lift or carry up to 10 pounds frequently, stand or walk six hours in an eight-hour workday, and sit for two hours in an eight-hour workday with normal breaks.

---

[3]Remeron is used to treat major depressive disorder. Side effects may include drowsiness and dizziness. *See* www.drugs.com/remeron (last visited December 20, 2012).

[4]Wellbutrin is used to treat major depressive disorder. Side effects may include dry mouth, nausea, stomach pain, headache, dizziness, muscle pain, skin rash, increased urination, changes in appetite, and weight loss or weight gain. *See* www.drugs.com/wellbutrin (last visited December 20, 2012).

[5]Diflucan is used to prevent fungal infection in people with weak immune systems. Side effects may include stomach pain, diarrhea, upset stomach, headache, and dizziness. *See* www.drugs.com/diflucan (last visited December 20, 2012)

[6]Side effects include diarrhea, dizziness, nausea, headache, fatigue, sleeping problems, rash, and depression. *See* www.truvada.com (last visited December 20, 2012)

[7]Side effects include trouble sleeping, headache, nausea, and tiredness. *See* www.isentress.com/raltegravir/isentress/consumer/hiv_therapy/index (last visited December 20, 2012) and www.isentress.com/raltegravir/isentress/consumer/common_side_effects_for_isentress/index (last visited December 20, 2012).

The work must be: (1) limited to simple, routine and repetitive tasks; and (2) done in an environment free of fast-paced production requirements with an emphasis on a per shift rather than a per hour basis.  Finally, the work must involve simple, work-related decisions with few, if any, workplace changes  (Tr. 65).  The VE testified that such an individual could not perform Plaintiff's past relevant work.  (Tr. 65).  However, such an individual could perform work as a packer (6,000 jobs in Southeast Michigan; 280,000 jobs nationally), sorter (4,000 jobs in Southeast Michigan; 220,000 jobs nationally), and inspector (6,000 jobs in Southeast Michigan; 240,000 jobs nationally) (Tr. 66).

The ALJ changed the hypothetical so that the individual could lift up to 10 pounds occasionally, stand or walk two hours in an eight-hour workday, and sit for six hours in an eight-hour workday with normal breaks (Tr. 66).  The VE testified that such an individual could perform work as a packer (1,500 jobs in Southeast Michigan; 140,000 jobs nationally), porter (1,500 jobs in Southeast Michigan; 120,000 jobs nationally), and bench assembler (3,000 jobs in Southeast Michigan; 110,000 jobs nationally) (Tr. 66-67).

Last, the ALJ added to the previous hypothetical the fact that the individual would be off task approximately 25 percent of the day in addition to regularly scheduled breaks; the VE testified that such an individual would be precluded from work (Tr. 67).

### C.      Plaintiff's Claims of Error

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act, because the ALJ: (1) erred in his RFC determination; (2) failed to evaluate Plaintiff's credibility using the factors outlined in 20 CFR

§416.929(c); and (3) improperly concluded that a Global Assessment of Functioning ("GAF")[8]

score of 50 is consistent with the ability to work.  Plaintiff also argues that his HIV satisfies

Listing 14.08.[9]

## III.    DISCUSSION

### A.    Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the

administrative agency handles claims, and the judiciary merely reviews the agency determination

for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*,

493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a government

agency makes the initial determination that can be appealed first to the agency itself, then to an

ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

---

[8]The GAF score is

a subjective determination that represents the clinician's judgment of the individual's overall level
of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting
self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or
communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in
several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41
to 50 means that the patient has serious symptoms . . . OR any serious impairment in social,
occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to
60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  "A GAF score may help an ALJ assess mental
RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and
symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."
*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

[9]In passing, Plaintiff cites *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) and argues, "[the
ALJ] never states what weight was given to any of the medical reports, nor does he state the reason for such weight
to be given as required under the law" and "the ALJ failed to give controlling weight to any objective medical
evidence substituting his own findings for that of the medical doctors" (Dkt. No. 10 at 8, 12).  *Rogers* discusses the
treating physician rule:  the opinions of treating physicians are generally given greater deference than those of non-
treating physicians.  *Rogers*, 486 F.3d at 242-246.  Plaintiff does not identify a treating physician or an opinion to
which the ALJ failed to give proper weight.  Accordingly, this Magistrate Judge finds Plaintiff's argument is waived.
*See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[i]t is not sufficient for a party to mention a
possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

not found during this administrative review process, the claimant may file an action in federal

district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

      This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de

novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.

Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making

a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

(the "ALJ's credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and credibility")

(internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a

certain degree is appropriate where an ALJ finds contradictions among medical reports,

claimant's testimony, and other evidence").  "However, the ALJ is not free to make credibility

determinations based solely upon an 'intangible or intuitive notion about an individual's

credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden shifts to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C.    *Analysis and Conclusions*

#### 1.    The ALJ Erred in His RFC Determination

Plaintiff argues that the ALJ erred by not including in his RFC determination Plaintiff's moderate limitations in concentration, persistence, or pace; severe fatigue; need to lie down; and medication side effects.

### a.    Moderate Limitations in Concentration, Persistence or Pace

The ALJ posed the following hypothetical to the VE:

Q.  I want you to assume we're talking about a person of [Plaintiff's] age, education, prior work experience, and skill set.  For the first hypothetical, I want you to assume we're talking about a person who is capable of performing up to the light exertional level, lifting up to 20 pounds occasionally, lifting or carrying up to 10 pounds frequently, and light work as defined by the Regulations. Standing or walking for approximately six hours per eight-hour workday, and sitting for approximately two hours per eight-hour workday, with normal breaks. I would ask you to assume that because of the need for frequent breaks, [and] the difficulties with concentration, persistence or pace, that the work must be limited to simple, routine, and repetitive tasks . . ., that it has to be done in a work environment free of fast-paced production requirements, with an emphasis on a per shift rather than a per hour basis, and the work must involve only simple, work-related decisions with few, if any, workplace changes.

(Tr. 65).  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  Plaintiff's argument  – that hypothetical limitations such as "simple" and "unskilled" fail to account for moderate mental deficiencies – is not uncommon, and the case law in this District resolves it both ways.  Indeed, there is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks.[10]   However, there is also authority that has found an

---

[10]  *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for

ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[11]  In analyzing the case law, this Magistrate Judge agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence or pace because the difficulty of a task does not always equate with the difficulty of staying on task.  *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.  Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

---

'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[11]  *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible "); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace").

-12-

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled, routine work" but excludes a moderate limitation in concentration.  Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.  *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace"). In a similar case, this evaluative process was explained as follows:

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325 at *7; *see also Lewicki*, 2010 WL 3905375 at *3.

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence and pace, such that the claimant had limitations in performing at a consistent pace.  *See Hess*, 2008 WL 2478325 at *7.  However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis.  *Id.* at *4.  *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical.  *Id.* at *8.

-13-

In this case, the ALJ's RFC limitation of simple, routine work accurately reflects state-reviewing psychologist Dr. Dyan Hampton-Aytch's opinion that Plaintiff is "moderately limited" in his ability to maintain attention and concentration for extended periods, but he is not precluded from simple repetitive work (Tr. 78).  In addition, psychologist Nick Boneff concluded that Plaintiff is "capable of engaging in simple work-type activities" (Tr. 310).  These conclusions are not significantly different from the hypothetical question presented by the ALJ, which limited Plaintiff to "simple, routine, and repetitive tasks" (Tr. 65).  As in *Hess* and *Lewicki*, this Court believes that the ALJ's finding of a moderate limitation in concentration, persistence or pace has to be considered in conjunction with Dr. Hampton-Aytch and Dr. Boneff's broader conclusions, which suggest that Plaintiff could successfully perform simple occupational tasks.  As such, the hypothetical question used by the ALJ is supported by substantial evidence in the record and should not be disturbed on appeal.

### b.  Plaintiff's Severe Fatigue, Need to Lie Down, and Medication Side Effects

The ALJ noted that Plaintiff claims he has a weak bladder, worsening diarrheal episodes, headaches three times a year and cluster headaches 2-3 times a day[12], constant fatigue and nausea.  In addition, Plaintiff claims he can only sleep two out of every five nights; he had two rash outbreaks, needs to rest for 1 ½ hours after he takes his medication, and takes at least two naps daily (Tr. 25-26, 29).  However, the ALJ did not incorporate these limitations in his RFC determination:  he did not find Plaintiff's testimony well-supported by the objective medical evidence, and found it was contradicted in some parts by the medical evidence (Tr. 30).

---

[12]A cluster headache is a type of headache characterized by excruciating pain over the eye and forehead that lasts from 15 minutes to an hour and occurs in clusters (e.g., a few times a day for two to eight weeks followed by months or years without occurrence).  *See Dorlands Illustrated Medical Dictionary*, 835 (31st Ed. 2007).

Plaintiff argues that the ALJ's credibility determination is flawed because he did not

analyze the factors outlined in 20 CFR § 404.1529(c)(3):

(i)      *Your daily activities*;

(ii)     *The location, duration, frequency and intensity of your pain or other symptoms*;

(iii)    Precipitating and aggravating factors;

(iv)     *The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms*;

(v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(emphasis added).  Specifically, Plaintiff argues that the ALJ does not address the side effects of

his medications (i.e., dizziness, drowsiness, diarrhea, headaches, nausea, frequent urination,

trouble sleeping, muscle weakness, and fatigue), daily activities, and pain symptoms[13].

Under SSR 96-8p:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).

In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

---

[13]While Plaintiff makes the argument that the ALJ did not consider his daily activities and pain symptoms, he does not indicate what pain symptoms he has nor does he indicate how his daily activities (or lack thereof) are indicative of his inability to work.  Indeed, the ALJ noted that Plaintiff typically "wakes up at 7a.m., and retires about 9:30 or 10p.m.  He has meetings at 7:30 a.m., 1 p.m., and 3 p.m., but takes naps and has something to eat in between sessions" (Tr. 27).

Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

Include a resolution of any inconsistencies in the evidence as a whole; and

Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints *solely* on the basis of such personal observations.

(Emphasis in original).

The ALJ was correct in his determination that Plaintiff did not take any medication in April 2010 (Tr. 26). However, the medical records show Plaintiff took Omeprazole[14] between September 10, 2010 and March 9, 2011; and Isentress between October 20, 2010 and March 9, 2011 (Tr. 315, 323). Plaintiff started Bactrim[15] on September 10, 2010; Diflucan on September 29, 2010; Truvada on October 20, 2010; and Wellbutrin and Remeron on May 4, 2011 (Tr. 315, 384). Finally, the record shows Plaintiff was taking Raltegravir[16] on November 23, 2010 (Tr. 306). The side effects of these medications are consistent with the symptoms Plaintiff alleges he suffers. But, in analyzing Plaintiff's symptoms, the ALJ simply stated: "[g]iven [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on [Plaintiff] by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor" (Tr. 28) and "[o]n

_____

[14]Side effects include stomach pain, nausea, vomiting, mild diarrhea, and headache. *See* www.drugs.com/omeprazole (last visited December 20, 2012).

[15]Side effects include vomiting, dizziness, and insomnia. *See* www.drugs.com/bactrim (last visited December 20, 2012).

[16]Raltegravir is the generic name for Isentress. *See* www.aidsinfo.nih.gov/drugs/420/patient/0/patient (last visited December 20, 2012).

July 8, 2011, [Plaintiff] admitted that Remeron was helping him sleep" (Tr. 29). The ALJ did

not support his credibility determination, and this Magistrate Judge finds the case should be

remanded for a thorough discussion of Plaintiff's symptoms, including the side effects of his

medication and any other non-medical evidence.

> ### 2. The ALJ Did Not Err in Determining that a GAF Score of 50 is Consistent with the Ability to Work

In his analysis, the ALJ stated:

> Nick Boneff, Ph.D., examined [Plaintiff] at the request of DDS on November 23, 2010[.] [D]r. Boneff diagnosed . . . a GAF score of 50.

> The U.S. Court of Appeals for the Sixth Circuit has indicated that a GAF of 50 is consistent with the ability to work (*Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).

(Tr. 27-28). Plaintiff says that was not the holding in *Smith*.

This Magistrate Judge concludes that the ALJ's conclusion was inconsistent with *Smith*:

the ALJ found a GAF score of 50 means Plaintiff can work; *Smith* found a GAF score of 50

means Plaintiff's mental capacity does not preclude him from work. *See Smith*, 482 F.3d at 877.

However, this distinction is immaterial, because GAF scores are of limited significance in

disability cases. *See Kornecky*, 167 Fed. Appx. at 511 (holding that there is no controlling

authority requiring the ALJ to put stock in a GAF score) (citations omitted). A GAF score

merely represents the clinician's judgment as to the individual's overall level of functioning. *See*

*DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 416 (6th Cir. 2006). "[A]ccording to the

[Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no

bearing on the subject's social and occupational functioning." *Kornecky*, 167 Fed. Appx. at 511.

The case should not be remanded on this issue.

3.      **The ALJ Erred at Step Three of the Disability Analysis by Failing to Thoroughly Evaluate Listing 14.08 Human Immunodeficiency Virus (HIV) Infection**

In determining whether Plaintiff's HIV infection met or medically equaled listing 14.08,

the ALJ states:

> [Plaintiff] has suffered rashes and oral thrush [candidiasis]. Such infections of the skin and oral mucosa are excluded from consideration as recurrent opportunistic infections [see 14.08B2]. There is no evidence of opportunistic infections at sites that would meet the listing. This finding is supported by the medical opinion of the State Agency and consultative physicians, all of whom considered the relevant Listings.
>
> .      .      .
>
> [Plaintiff's] attorney asserts that [Plaintiff] meets listing 14.08 due to his low T cell counts; numerous thrush infections, along with numerous rashes and lesions. I have considered [the attorney's] argument, but find that [Plaintiff] has received treatment for the allegedly disabling impairment(s), and that treatment has been essentially routine and/or conservative in nature, and that the very specific criteria of the listing are not met.

(Tr. 23, 30). Listing 14.08B2 requires Plaintiff to have "[c]andidiasis[17] involving the esophagus,

trachea, bronchi, or lungs, or at a site *other than* the skin, urinary tract, intestinal tract, or oral or

vulvovaginal mucous membranes" (emphasis added).

Plaintiff argues that the ALJ's conclusory statements necessarily means he completely

ignored step three of the disability analysis and failed to evaluate his HIV in relation to Listing

14.08. Relying on *Christephore v. Comm'r of Soc. Sec.*, Case Number 11-13547, 2012 WL

2274328 (E.D. Mich. June 18, 2012), Plaintiff says the ALJ does not give any rationale for

finding that his HIV does not meet or medically equal the Listing.

Under a theory of presumptive disability, [Plaintiff] is eligible for benefits if he
has an impairment that meets or medically equals an impairment found in the

---

[17]Candidiasis is usually a superficial infection of the skin or mucous membranes, but it can manifest as a systemic infection; any form can become more severe in immuno-compromised patients. It is also known as candidosis. *See Dorland's Illustrated Medical Dictionary*, 285 (31st Ed. 2007).

Listing.  The Listing describes impairments that are severe enough to prevent [Plaintiff] from doing any gainful activity.  20 C.F.R. § 404.1425(a).  If [Plaintiff] cannot show that he meets a listed impairment, he may be able to establish that his impairment "is at least equal in severity and duration to the criteria of any listed impairment."  *Id.* [at] § 404.1526(a).  When considering presumptive disability at Step Three, an ALJ must analyze [Plaintiff's] impairments in relation to the Listed impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review.

*Christephore v. Comm'r of Soc. Sec.*, Case Number 11-13547, 2012 WL 2274328 at *6 (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).  In *Christephore*, the ALJ identified Plaintiff's HIV as a "severe" impairment at step two of the disability analysis, but failed to discuss Listing 14.08 in his step three analysis.  The ALJ simply stated that plaintiff's HIV does not meet or medically equal the criteria of Listing 14.00, which includes Listing 14.08. *Christephore*, 2012 WL 2274328 at *6.  The court noted that Listing 14.08 is broken down into subsidiary lists of impairments (A-K), and stated the ALJ failed to discuss Listing 14.08A-K and to evaluate plaintiff's symptoms and the side effects of his medication in relation to the Listing. *Id.* at *7.  The court concluded that the "ALJ . . . failed to identify the standard to be applied and to apply that standard [so] [i]t [was] impossible to determine whether substantial evidence exists to support the ALJ's third step evaluation."  *Id.*

Here, the ALJ did not simply conclude that Plaintiff does not meet Listing 14.00.  Instead, the ALJ reviewed Listing 14.08 and concluded Plaintiff did not meet that Listing, because he has oral candidiasis.  According to Plaintiff, the ALJ erred by relying on the medical opinion of the State Agency and consultative physicians, because he did not develop candidiasis until October 2010 – after the State Agency and consultative physicians reviewed his medical records.  Plaintiff cites pages 313-362 in support of his argument.

This Magistrate Judge reviewed pages 313-362, and the only reference to candidiasis does not indicate where Plaintiff's candidiasis is located: "Pt last seen one month ago as a walk

-19-

in with thrush [candidiasis] which was treated with Diflucan"[18] (Tr. 313). Importantly, Plaintiff testified that he had thrush in his throat (i.e., oral thrush) (Tr. 56), which does not meet Listing 14.08. Accordingly, this Magistrate Judge finds substantial evidence exists to support the ALJ's third step evaluation as to Listing 14.08B2.

However, this Magistrate Judge finds the ALJ did not perform a thorough analysis of Listing 14.08. For example, the ALJ did not discuss whether Plaintiff's HIV infection satisfies Listing 14.08K:

> Repeated . . . manifestations of HIV infection, including those listed in 14.08A-J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
>
> 1.  Limitation of activities of daily living.
>
> 2.  Limitation in maintaining social functioning.
>
> 3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

A discussion of Listing 14.08K may not change the ALJ's decision, because in analyzing Plaintiff's mental impairments, the ALJ did not find Plaintiff's daily living, social functioning, or deficiencies in concentration, persistence or pace were at the "marked" level. However, Plaintiff is entitled to a rationale for the ALJ's finding that his HIV does not meet or medically equal the Listings.

---

[18]On September 30, 2010, Plaintiff had one patch of thrush on his tongue (T. 292). This is oral candidiasis that is excluded from Listing 14.08B2.

IV.     **CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.  Specifically, the ALJ must: (1) thoroughly discuss Plaintiff's symptoms, including the side effects of his medication and any other non-medical evidence, in compliance with 20 CFR § 404.1529(c)(3) and SSR 96-8p; and (2) explain whether Plaintiff's impairments satisfy listing 14.08A-K.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise  response  proportionate to the objections in length and complexity.  *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule

without awaiting the response.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: January 11, 2013


*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 11, 2013, by electronic and/or ordinary mail.*

*s/Melody Miles*
*Case Manager*